**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Toledo Bar Assn. v. DeMarco,* Slip Opinion No. 2015-Ohio-4549.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2015-OHIO-4549

TOLEDO BAR ASSOCIATION *v.* DEMARCO.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Toledo Bar Assn. v. DeMarco,* Slip Opinion No. 2015-Ohio-4549.]**

*Attorneys—Misconduct—Knowingly making false statements of fact to a tribunal and failing to correct false statements previously made to a tribunal— Offering evidence that the lawyer knows to be false—Engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation—One year suspension, with six months stayed on the condition that respondent engage in no further misconduct.*

(No. 2014-1738—Submitted May 6, 2015—Decided November 5, 2015.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 2014-009.

_____

**Per Curiam.**

{¶ 1} Respondent, Robert Paul DeMarco of Solon, Ohio, Attorney Registration No. 0031530, was admitted to the practice of law in Ohio in 1969. In February 2014, relator, the Toledo Bar Association, charged him with professional misconduct for making false statements to a court in Lucas County. Based upon the parties' stipulations and evidence presented at the hearing, a three-member hearing panel of the Board of Commissioners on Grievances and Discipline[1] issued a report finding that DeMarco had engaged in the charged misconduct and recommending that he be suspended from the practice of law for one year, with six months stayed. The board adopted the panel's findings of misconduct but increased the recommended sanction to a one-year actual suspension. DeMarco has filed objections to the recommended sanction, arguing that a fully stayed suspension is warranted.

{¶ 2} Upon our independent review of the record, we overrule DeMarco's objections, but we agree with the panel that a one-year suspension, with six months stayed, is the appropriate sanction in this case.

## Misconduct

{¶ 3} In 2011, DeMarco, while representing a plaintiff in a civil suit, entered into an agreement with defense counsel authorizing Jack Harper, a computer expert whom DeMarco had retained, to search the defendants' electronic devices pursuant to a strict discovery protocol. Under the terms of the protocol, potentially relevant documents were to be delivered to the trial judge "for an in-camera inspection to determine what documents, if any, may be turned over to [DeMarco]." Harper thereafter searched the computers of one of the defendants and placed the results of his search on a disc. Harper, however, gave the disc to DeMarco, who reviewed it and determined that none of the documents

---

[1] Effective January 1, 2015, the Board of Commissioners on Grievances and Discipline has been renamed the Board of Professional Conduct. *See* Gov.Bar R. V(1)(A), 140 Ohio St.3d CII.

would be useful for his case. DeMarco never submitted the disc to the trial judge for an in camera inspection.

**{¶ 4}** At a March 2012 pretrial conference, defense counsel asked DeMarco about the results of the computer search, and DeMarco indicated that there was nothing of value in the documents. After defense counsel questioned how DeMarco could have already come to that conclusion, DeMarco stated that Harper had reviewed the documents and told him that there was nothing relevant. DeMarco denied having possession of the disc containing the documents that Harper had retrieved. After the conference, DeMarco telephoned Harper and left a voicemail essentially admitting that he had lied to the court about having the disc. DeMarco then returned the disc to Harper.

**{¶ 5}** The parties resolved their lawsuit in June 2012, and defense counsel requested that Harper return the disc. When Harper refused, the defendants filed a motion to compel. In response, Harper notified the court that he had destroyed the disc. In November 2012, the trial judge held a hearing for Harper to show cause why he should not be held in contempt, and Harper testified that he had given a copy of the disc to DeMarco and that after DeMarco had advised him that the case was over, he had destroyed all media related to the matter.

**{¶ 6}** In response to Harper's testimony, DeMarco repeated multiple times—both in the judge's chambers and in open court—that he had never received the disc from Harper and that he had not reviewed documents on the disc. In fact, when responding to Harper's specific testimony that DeMarco had lied to the court at the March 2012 conference, DeMarco stated that he "would like to go outside with [Harper]" and that he "never lied to anybody, especially to a Court." Harper, however, then played DeMarco's voicemail for the judge. After that, the show-cause hearing quickly ended without the judge taking any punitive action against Harper. Defense counsel and the judge later jointly notified relator about DeMarco's multiple false statements to the court.

**{¶ 7}** Based on this conduct, the parties stipulated and the board found that DeMarco had violated Prof.Cond.R. 3.3(a)(1) (prohibiting a lawyer from knowingly making a false statement of fact or law to a tribunal or failing to correct a false statement previously made to the tribunal), 3.3(a)(3) (prohibiting a lawyer from offering evidence that the lawyer knows to be false), and 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation).  We agree with these findings of misconduct.

## Sanction

**{¶ 8}** When imposing sanctions for attorney misconduct, we consider several relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases.  *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16.  In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in BCGD Proc.Reg. 10(B).[2]  *Disciplinary Counsel v. Broeren*, 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21.  However, because each disciplinary case is unique, we are not limited to the factors specified in BCGD Proc.Reg. 10(B) and may take all relevant factors into account in determining which sanction to impose.

### *Aggravating and mitigating factors*

**{¶ 9}** The board found, and we agree, that only one aggravating factor exists: DeMarco acted with a dishonest motive.  *See* BCGD Proc.Reg. 10(B)(1)(b).  The board found three mitigating factors: Demarco has no prior discipline, he displayed a cooperative attitude during the disciplinary process, and he provided letters from judges and attorneys attesting to his good character and reputation.  *See* BCGD Proc.Reg. 10(B)(2)(a), (d), and (e).

---

[2] Effective January 1, 2015, the aggravating and mitigating factors previously set forth in BCGD Proc.Reg. 10(B)(1) and (2) are codified in Gov.Bar R. V(13), 140 Ohio St.3d CXXIV.

**{¶ 10}** DeMarco objects to the board's refusal to adopt two additional mitigating factors that the parties had stipulated to: a timely, good-faith effort to rectify the consequences of his misconduct, *see* BCGD Proc.Reg. 10(B)(2)(c), and the lack of a selfish motive, *see* BCGD Proc.Reg. 10(B)(2)(b). Specifically, DeMarco claims that the panel failed to properly credit his remorseful conduct after the November 2012 show-cause hearing, including his admission of fault to relator and his tender of a letter of apology to the judge. But DeMarco had ample opportunity before and during the November 2012 hearing to clear the record and advise the judge of his prior misrepresentation. DeMarco, however, continued lying to the court, despite the possibility that the court would impose contempt sanctions against Harper. And DeMarco only admitted his misrepresentations after Harper played the voicemail, at which point DeMarco had no other option but to admit the truth. Thus, the panel correctly found that DeMarco did not make a *timely* good-faith effort to rectify the consequences of his misconduct.

**{¶ 11}** DeMarco also asserts that the panel "failed to appreciate the reason for the initial lie made at the March, 2012 pretrial." He claims that he was "covering for Mr. Harper" and that he therefore should have been given mitigating credit for lacking a selfish motive. However, as we have explained in previous cases, "[u]nless the record weighs heavily against a hearing panel's findings, we defer to the panel's credibility determinations, inasmuch as the panel members saw and heard the witnesses firsthand." *Cuyahoga Cty. Bar Assn. v. Wise*, 108 Ohio St.3d 164, 2006-Ohio-550, 842 N.E.2d 35, ¶ 24. Here, the panel, after seeing and hearing DeMarco's explanation for his conduct, found that his motive was selfish and that he likely made misrepresentations to the court because he feared that he had violated the discovery protocol by not submitting the documents to the judge for an in camera inspection. Following our precedent, we defer to the panel's assessment of DeMarco's motive.

*Applicable precedent*

**{¶ 12}** An actual suspension from the practice of law "is the general sanction when an attorney engages in dishonest conduct." *Medina Cty. Bar Assn. v. Cameron*, 130 Ohio St.3d 299, 2011-Ohio-5200, 958 N.E.2d 138, ¶ 17. This is especially true when an attorney makes repeated and material false statements to a court:

> A lawyer who engages in a material misrepresentation to a court or a pattern of dishonesty with a client violates, at a minimum, the lawyer's oath of office * * *. Such conduct strikes at the very core of a lawyer's relationship with the court and with the client. Respect for our profession is diminished with every deceitful act of a lawyer. We cannot expect citizens to trust that lawyers are honest if we have not yet sanctioned those who are not. * * * When an attorney engages in a course of conduct resulting in a finding that the attorney has violated [the disciplinary rule prohibiting conduct involving dishonesty, fraud, deceit, or misrepresentation], the attorney will be actually suspended from the practice of law for an appropriate period of time.

*Disciplinary Counsel v. Fowerbaugh*, 74 Ohio St.3d 187, 190, 658 N.E.2d 237 (1995).

**{¶ 13}** In his objections, DeMarco acknowledges this general principle but nonetheless argues that a fully stayed suspension is appropriate here, citing cases in which we stayed suspensions, despite dishonest conduct, due to the presence of significant mitigating factors. For example, DeMarco cites *Cameron*, a case in which an attorney filed a motion and an affidavit with a court falsely representing that the parties had reached a settlement. In that case, we suspended the attorney

6

for one year but stayed the entire suspension because the attorney's dishonesty was an isolated incident in a lengthy career and little or no harm resulted from the misconduct. *Cameron* at ¶ 17-18. DeMarco argues that like the attorney in *Cameron*, he lacks prior discipline and therefore should be given a fully stayed suspension.

{¶ 14} The facts and circumstances here, however, are more egregious than the facts in *Cameron* and the other cases cited in DeMarco's objections. DeMarco engaged in a series of misrepresentations directly to the court in March and November 2012. At the November 2012 show-cause hearing, he threatened to take his own expert "outside" after the expert testified truthfully about giving the disc to DeMarco. And if Harper had not saved DeMarco's voicemail, Harper might have been sanctioned by the court. Additionally, DeMarco admitted at the panel hearing that he was not remorseful for making the repeated misrepresentations until Harper played the voicemail. The board noted that "[a] key foundation upon which the judicial process rests is the truthfulness of attorneys appearing before our courts." We agree, and based on these facts, we find no compelling reason to deviate from our rule that dishonest and deceitful conduct mandates an actual suspension. Accordingly, DeMarco's objections are overruled.

{¶ 15} However, we agree with the panel that a one-year suspension, with six months stayed, is the appropriate sanction in this case. The board increased the panel's recommended sanction to a one-year actual suspension, but the board did not cite any precedent to support its recommendation. Although DeMarco's deceitful conduct warrants an actual suspension, the character references and character testimony indicate that his misconduct here was an aberration in an otherwise unblemished 45-year legal career. We find that under these circumstances, staying a portion of the one-year suspension is consistent with prior cases. *Compare Toledo Bar Assn. v. Miller*, 132 Ohio St.3d 63, 2012-Ohio-

1880, 969 N.E.2d 239 (imposing a one-year suspension, with six months stayed, on an attorney who lied to two courts and mishandled his law firm's trust-account funds; the attorney had no prior discipline) *with Disciplinary Counsel v. Stafford*, 131 Ohio St.3d 385, 2012-Ohio-909, 965 N.E.2d 971 (imposing a one-year actual suspension on an attorney who not only engaged in dishonest conduct but who also committed a myriad of other disciplinary-rule violations, including issuing false statements concerning the integrity of a judicial officer).

**Conclusion**

**{¶ 16}** For the reasons explained above, DeMarco is suspended from the practice of law for one year, with six months of the suspension stayed on the condition that he engage in no further misconduct. Costs are taxed to DeMarco.

Judgment accordingly.

PFEIFER, O'DONNELL, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

O'CONNOR, C.J., dissents, and would suspend the respondent for 12 months without stay.

_____

McKenny, Ernsberger & Grude, L.L.C., and David G. Grude; and Michael A. Bonfiglio, Bar Counsel, for relator.

Richard C. Alkire Co., L.P.A., Richard C. Alkire, and Dean Nieding, for respondent.

_____