**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Disciplinary Counsel v. Schuman,* **Slip Opinion No. 2017-Ohio-8800.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2017-OHIO-8800

DISCIPLINARY COUNSEL *v.* SCHUMAN.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Disciplinary Counsel v. Schuman,* **Slip Opinion No. 2017-Ohio-8800.]**

*Attorneys—Misconduct—Violations of professional-conduct rules, including collecting a clearly excessive fee and knowingly making a false statement of fact or law to a tribunal—One-year suspension, with six months stayed on conditions.*

(No. 2016-1834—Submitted May 3, 2017—Decided December 6, 2017.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2016-021.

_____

**Per Curiam**.

{¶ 1} Respondent, Andrew Robert Schuman, of Bowling Green, Ohio, Attorney Registration No. 0072950, was admitted to the practice of law in Ohio in 2000. In June 2016, relator, disciplinary counsel, charged him with making

misrepresentations to a court in order to collect a clearly excessive fee. Schuman stipulated that he had committed the charged professional-conduct-rule violations. After a hearing, the Board of Professional Conduct issued a report recommending that we suspend him for one year, with six months stayed on conditions. Schuman objects to the board's report, primarily arguing that the circumstances here warrant a fully stayed suspension.

{¶ 2} For the reasons explained below, we hold that the board's recommended sanction is appropriate and therefore overrule Schuman's objection to his suspension.

**Misconduct**

{¶ 3} In December 2010, the Hancock County Court of Common Pleas, Juvenile Division, appointed Schuman to act as the guardian ad litem ("GAL") for a minor child in a custody case. Upon completion of his services, Schuman submitted an itemized bill to the juvenile court requesting $3,416 in GAL fees based on 42.7 hours of work at $80 an hour. In September 2011, the court ordered each party to pay half of Schuman's bill and ordered that the parties' $500 deposit for GAL fees be released to Schuman, with each party receiving credit for the amount that he or she had contributed toward the deposit. D.S., the child's father, had paid $150 toward the deposit, and H.W., the child's mother, had paid $350.

{¶ 4} By February 2013, D.S. had paid only $200 toward his share of Schuman's remaining fees and H.W. had not paid anything toward her share. As a result, Schuman brought an action in the Findlay Municipal Court to collect his fees. His complaint, however, sought a joint-and-several-liability judgment against the parents for $6,405, an amount Schuman calculated by multiplying his GAL hours by his legal-services rate of $150 an hour. His complaint failed to mention that the juvenile court had approved payment for his GAL work at the rate of $80 an hour, that he had already received $700 toward his bill of $3,416, and that the juvenile court had ordered H.W. and D.S. to each pay half of the bill.

2

**{¶ 5}** After the parents failed to answer his complaint, Schuman moved for a default judgment. To support his motion, he filed an affidavit indicating that he had performed 42.7 hours of legal work in the juvenile-court case and that "the reasonable rate of legal services in Findlay, Ohio was at all relevant times $150.00 per hour." He also submitted the same itemized bill that he had filed with the juvenile court. But he altered the document by deleting the line showing that his GAL rate was $80 per hour and that his fees were $3,416.

**{¶ 6}** In October 2013, after the municipal court granted a default judgment, Schuman initiated garnishment proceedings against both parents, seeking $7,273.55, which represented the default judgment plus interest and costs. Because H.W. was no longer employed, Schuman garnished only D.S.'s wages. At the end of 2014, Schuman reported to the municipal court that he had collected $7,127.87 from D.S. but was still owed $369.78. Upon D.S.'s request, the municipal court scheduled a hearing in response to Schuman's filing. Prior to the hearing, Schuman told D.S. that unless the parties reached an agreement, the court would order D.S. to pay the remaining balance. In response, D.S. agreed to pay Schuman an additional $250 to settle the matter. The parties thereafter advised the municipal court of their agreement, and the judge dissolved the garnishment order.

**{¶ 7}** D.S. failed to send Schuman the agreed-upon payment, and in May 2015, Schuman moved to reinstate garnishment of D.S.'s wages. But by that time, D.S. was no longer employed with the same company. Schuman then attempted to garnish D.S.'s bank account, but there were not sufficient funds in the account for a garnishment.

**{¶ 8}** Later in 2015, D.S. filed a grievance against Schuman. During the disciplinary proceedings, Schuman admitted that in the municipal-court case, he (1) sought payment at the rate of $150 an hour even though the juvenile court had approved a rate of only $80 an hour, (2) collected $7,127.87 from D.S. even though his total GAL fees were only $3,416, and (3) sought joint and several liability

against the parents even though the juvenile court had specifically ordered each of them to pay half of his GAL fees. Thus, he acknowledged that he had omitted material facts from the municipal-court complaint, that he had filed a misleading affidavit in that case, and that he had used the judicial system to collect an illegal or clearly excessive fee. Schuman further admitted that despite having had multiple opportunities to notify the municipal court of the true nature of the juvenile court's order, he had continued to perpetrate a fraud on the municipal court by claiming that D.S. owed him additional funds.

{¶ 9} Based on this conduct, the parties stipulated and the board found that Schuman had violated Prof.Cond.R. 1.5(a) (prohibiting a lawyer from making an agreement for, charging, or collecting an illegal or clearly excessive fee), 3.3(a)(1) (prohibiting a lawyer from knowingly making a false statement of fact or law to a tribunal or failing to correct a false statement of material fact or law previously made to the tribunal by the lawyer), 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice), and 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law).

{¶ 10} We adopt the board's findings of misconduct. Schuman agrees with the misconduct findings, but he objects to the board's factual finding that he "is and always has been a solo practitioner." Schuman describes this finding as "patently incorrect" because he testified that prior to opening his own law practice, he worked as an assistant prosecuting attorney and as an attorney for an insurance company. Schuman is correct; the evidence indicated that he has not always worked as a solo practitioner. Therefore, we sustain this objection, although we note that the board's minor error had no effect on its misconduct findings or its recommended sanction.

**Sanction**

{¶ 11} When imposing sanctions for attorney misconduct, we consider several relevant factors, including the ethical duties that the lawyer violated, the

4

aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

*Aggravating and mitigating factors*

{¶ 12} The board found the following aggravating factors: a selfish motive, multiple offenses, and harm to a vulnerable individual. *See* Gov.Bar R. V(13)(B)(2), (4), and (8).

{¶ 13} In mitigation, the board noted that Schuman has no prior disciplinary record, he made full and free disclosures to the board and had a cooperative attitude toward the disciplinary proceedings, and he submitted numerous letters and other evidence attesting to his character, to his skills and professionalism as an attorney, and to his leadership role in the community. *See* Gov.Bar R. V(13)(C)(1), (4), and (5). In addition, the board found that Schuman made restitution by refunding to D.S. (1) the difference between the $150-an-hour rate that he requested in the municipal-court proceeding and his approved GAL-rate of $80 an hour, (2) the amount he received from D.S. that should have been paid by H.W., and (3) the amount he collected for interest and court costs. *See* Gov.Bar R. V(13)(C)(3). The board also described Schuman's testimony at his disciplinary hearing as "candid, sincere, and contrite."

*Applicable precedent and Schuman's objection*
*to the recommended sanction*

{¶ 14} To support its recommended sanction of a one-year suspension with six months conditionally stayed, the board cited a number of cases holding that when an attorney's misconduct involves repeated dishonesty—and especially when the dishonesty includes making misrepresentations to a court—an actual suspension from the practice of law is warranted. *See, e.g.*, *Toledo Bar Assn. v. Miller*, 132 Ohio St.3d 63, 2012-Ohio-1880, 969 N.E.2d 239 (suspending an attorney for one year with six months conditionally stayed for making false statements about his employment status on two garnishment notices, one of which

was filed in court, and failing to disclose income in his bankruptcy proceeding); *Disciplinary Counsel v. Rohrer*, 124 Ohio St.3d 65, 2009-Ohio-5930, 919 N.E.2d 180 (suspending an attorney for six months for deliberately violating a court order and then making false and misleading statements to the court and a state agency about his actions); *Toledo Bar Assn. v. DeMarco*, 144 Ohio St.3d 248, 2015-Ohio-4549, 41 N.E.3d 1237 (suspending an attorney for one year with six months conditionally stayed for repeatedly making false statements to a court and saying that he "would like to go outside" with a witness who had challenged the veracity of the attorney's untruthful statements); *Warren Cty. Bar Assn. v. Vardiman*, 146 Ohio St.3d 23, 2016-Ohio-352, 51 N.E.3d 587 (suspending an attorney for one year with six months conditionally stayed for forging the signature of an unrepresented party on four documents and then filing them in a court and for falsely signing the name of an alleged witness to the execution of a will).

{¶ 15} Schuman objects to an actual suspension from the practice of law, arguing that the presence of significant mitigating factors in this case—and especially his character and reputation evidence—overcome any presumption in favor of an actual suspension. And given the evidence of his character, he argues, it is not necessary to impose an actual suspension in order to protect the public from future misconduct.

{¶ 16} In reaching its recommended sanction, however, the board fully considered Schuman's mitigating evidence. Indeed, the board noted that Schuman's conduct toward D.S. "was an isolated incident of misbehavior in an otherwise admirable legal career, as shown by the 55 character letters admitted into evidence." But despite this significant mitigating evidence, the board concluded that "misrepresentation to the courts * * * is a most serious offense" and therefore Schuman's misconduct warrants an actual suspension.

{¶ 17} We agree. We have often recognized that "the primary purpose of disciplinary sanctions is not to punish the offender, but to protect the public."

6

*Disciplinary Counsel v. O'Neill*, 103 Ohio St.3d 204, 2004-Ohio-4704, 815 N.E.2d 286, ¶ 53. Protecting the public, however, is not strictly limited to protecting clients from a specific attorney's potential misconduct. Imposing attorney-discipline sanctions also protects the public by demonstrating to the bar and the public that this type of conduct will not be tolerated. As previously explained,

> [a] lawyer who engages in a material misrepresentation to a court or a pattern of dishonesty with a client violates, at a minimum, the lawyer's oath of office * * *. Such conduct strikes at the very core of a lawyer's relationship with the court and with the client. Respect for our profession is diminished with every deceitful act of a lawyer. We cannot expect citizens to trust that lawyers are honest if we have not yet sanctioned those who are not.

*Disciplinary Counsel v. Fowerbaugh*, 74 Ohio St.3d 187, 190, 658 N.E.2d 237 (1995).

{¶ 18} As noted above, it is well established in our case law that an attorney's course of conduct involving dishonesty usually warrants an actual suspension, and "[t]his is especially true when an attorney makes repeated and material false statements to a court." *DeMarco*, 144 Ohio St.3d 248, 2015-Ohio-4549, 41 N.E.3d 1237, at ¶ 12. Beyond Schuman's lack of candor to the municipal court, he also abused the judicial system in order to bilk more money from a person than he was entitled to receive. Even considering his mitigating evidence, an actual suspension is appropriate for his ethical violations. We therefore overrule Schuman's objection and adopt the board's recommended sanction.

### Conclusion

{¶ 19} For the reasons explained above, Andrew Robert Schuman is suspended from the practice of law in Ohio for one year, with the final six months

stayed on the conditions that he commit no further misconduct and complete two continuing-legal-education courses on law-office management, in addition to the requirements of Gov.Bar R. X, during the term of his suspension. If Schuman fails to comply with the conditions of the stay, the stay will be lifted and he will serve the full one-year suspension. We condition any reinstatement on Schuman's providing proof that (1) prior to this court's suspension order, he took actions permitted under law to request that the Findlay Municipal Court set aside the judgment against H.W. and D.S. and dismiss the case and (2) he has paid the costs of these proceedings. Upon his reinstatement, Schuman must serve a one-year period of monitored probation pursuant to Gov.Bar R. V(21).

Judgment accordingly.

O'DONNELL, KENNEDY, FRENCH, FISCHER, and DEWINE, JJ., concur.

O'CONNOR, C.J., and O'NEILL, J., dissent and would not stay any portion of the suspension.

_____

Scott J. Drexel, Disciplinary Counsel, and Karen H. Osmond, Assistant Disciplinary Counsel, for relator.

Jeffrey P. Nunnari, for respondent.

_____