**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Disciplinary Counsel v. Bennett,* **Slip Opinion No. 2018-Ohio-3973.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2018-OHIO-3973

DISCIPLINARY COUNSEL *v.* BENNETT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Bennett,* Slip Opinion No. 2018-Ohio-3973.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct, including failing to provide competent representation to a client, failing to keep a client reasonably informed about the status of a matter, and engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation—One-year suspension.*

(No. 2018-0252—Submitted April 10, 2018—Decided October 2, 2018.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2016-065.

_____

**Per Curiam.**

{¶ 1} Respondent, Clyde Bennett II, of Cincinnati, Ohio, Attorney Registration No. 0059910, was admitted to the practice of law in Ohio in 1992.

**{¶ 2}** On September 26, 2007, Bennett pleaded guilty to structuring financial transactions to avoid federal reporting requirements for transfers in excess of $10,000. Consequently, we suspended his license to practice law on an interim basis on February 15, 2008. *In re Bennett*, 117 Ohio St.3d 1401, 2008-Ohio-594, 881 N.E.2d 270. On February 4, 2010, we indefinitely suspended him from the practice of law with credit for time served for the conduct underlying his criminal conviction and we reinstated him to the practice of law on April 29, 2011. *Disciplinary Counsel v. Bennett*, 124 Ohio St.3d 314, 2010-Ohio-313, 921 N.E.2d 1064, *reinstatement granted*, 128 Ohio St.3d 1220, 2011-Ohio-2248, 946 N.E.2d 757.

**{¶ 3}** In a complaint certified to the Board of Professional Conduct on December 6, 2016, relator, disciplinary counsel, charged Bennett with multiple ethical violations arising out of his representation of a single client. Based on the parties' stipulations and evidence adduced at a hearing, a panel of the board issued a report finding that Bennett violated four professional conduct rules and recommending that three other alleged violations be dismissed and that Bennett be suspended from the practice of law for six months. The board adopted the panel's report in its entirety, and no objections have been filed.

**{¶ 4}** We adopt the board's findings of fact and misconduct, but find that the appropriate sanction for Bennett's misconduct is a one-year suspension from the practice of law.

## Misconduct

**{¶ 5}** On January 17, 2014, John Kelley was convicted of two counts of attempted murder and four counts of felonious assault and sentenced to 25 years in prison. The First District Court of Appeals affirmed Kelley's conviction on December 19, 2014, and he had 45 days—until February 2, 2015—to perfect his appeal to this court. *See* S.Ct.Prac.R. 7.01(A).

{¶ 6} In January 2015, Kelley's mother asked Bennett to represent him in that appeal. Bennett agreed to undertake the representation for a flat fee of $5,000, but he did not reduce the agreement to writing and failed to effectively communicate that he did not intend to begin work until the entire flat fee had been paid. Kelley's mother paid Bennett $2,500 on January 12, 2015. Treating the fee as a flat fee earned upon receipt, Bennett deposited the money into his operating account without simultaneously advising Kelley's family of the possibility of a refund.

{¶ 7} Bennett claimed that he had been under the mistaken belief that his representation did not commence until the client paid the agreed retainer in full, he filed a notice of appearance in a case, or he otherwise conducted some public legal matter on behalf of the client. Although he began to do some preliminary work on Kelley's case after receiving half of the agreed retainer, he did not consider that work to have commenced the representation.

{¶ 8} Bennett's stated legal strategy was to pursue Kelley's state remedies before filing a petition for habeas corpus in federal court. But Bennett did not have an adequate understanding of the legal requirement that prisoners exhaust all state court remedies before raising claims in a federal habeas corpus proceeding. Believing that a direct appeal to this court would be unsuccessful, and recognizing that Kelley's principal arguments required evidence outside the record, Bennett determined that a petition for postconviction relief in state court followed by a federal habeas petition was a better course of action. He therefore elected not to file a timely direct appeal to this court. However, he failed to inform Kelley of that fact during a meeting between the two men shortly after the February 2, 2015 filing deadline had passed. Eventually, after receiving an additional $1,000 toward the retainer—including a $500 payment from Kelley on February 3, 2015—Bennett decided that he had received enough money to enter an appearance and undertake the representation.

**{¶ 9}** On March 3, 2015, Bennett filed a perfunctory one-page motion for delayed appeal in this court. His affidavit in support of that motion stated:

> The Defendant did not file for an appeal on time because counsel for Defendant was not retained until several days after the expiration of the 45 day time period. Counsel immediately filed the instant Motion for Delayed Appeal. Defendant's family could not procure funds to retain counsel until after the expiration of the 45 day time period.

**{¶ 10}** Bennett has acknowledged that his affidavit intentionally omitted relevant information and is misleading. Specifically, Bennett admitted that the omissions were significant and designed to mislead a court considering a subsequent habeas petition into believing that "a good faith attempt was made to avail Mr. Kelley of his state remedies." In his testimony before the board, Bennett maintained that he had no expectation that the motion would be granted because it was a pro forma filing intended only to exhaust Kelley's state court remedies before filing a petition to vacate Kelley's sentence in the state trial court. He did not send a copy of the motion to Kelley or his family, nor did he disclose his purported litigation strategy to them.

**{¶ 11}** Kelley's mother made two additional $500 payments to Bennett on April 6 and May 4, 2015. And we denied Bennett's motion for delayed appeal on April 29, 2015. The following week, Bennett wrote to Kelley and stated:

> Unfortunately, the Ohio Supreme Court denied our request for a delayed appeal. This concludes my representation of you. However, your next legal procedure is a federal habeas petition. I will do [sic] same if your mother and/or family continues to make

4

payments. The habeas petition must demonstrate that you experienced a constitutional deprivation.

Please write back as soon as possible.

Bennett received no response and made several unsuccessful attempts to contact Kelley's family. But he ceased all communications after receiving Kelley's grievance in August 2015.

{¶ 13} Kelley retained new counsel who alleged that Bennett's ineffective assistance of counsel constituted good cause for the filing of Kelley's second motion for delayed appeal, but we denied that motion. The United States District Court for the Southern District of Ohio, Western Division, later found that Bennett's deficiencies in performance excused Kelley's failure to timely appeal his conviction to this court, but nonetheless dismissed his habeas petition on other grounds.

{¶ 14} The board found that the above-described conduct violated Prof.Cond.R. 1.1 (requiring a lawyer to provide competent representation to a client), 1.4(a)(3) (requiring a lawyer to keep the client reasonably informed about the status of a matter), 1.5(d)(3) (prohibiting a lawyer from charging a fee denominated as "earned upon receipt," "nonrefundable," or in any similar terms without simultaneously advising the client in writing that the client may be entitled to a refund of all or part of the fee if the lawyer does not complete the representation), and 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). The parties jointly requested that four other alleged violations be dismissed, and the board agreed.

{¶ 15} Based on the foregoing, we agree that Bennett's conduct violated Prof.Cond.R. 1.1, 1.4(a)(3), 1.5(d)(3), and 8.4(c) and hereby dismiss the remaining allegations of relator's complaint.

**Sanction**

{¶ 16} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 17} The parties stipulated and the board found that the relevant aggravating factors include Bennett's prior indefinite suspension from the practice of law for conduct involving dishonesty, fraud, deceit, or misrepresentation, his commission of multiple offenses, and the fact that his misconduct involved a vulnerable criminal defendant. *See* Gov.Bar R. V(13)(1), (4), and (8).

{¶ 18} The board deemed Bennett's misrepresentations to be "a most serious offense" and noted that it had no way of knowing whether this court would have exercised jurisdiction over Kelley's direct appeal had it been timely filed. It also found that despite Bennett's arguments to the contrary, his misconduct caused harm to his client by depriving him of the opportunity to directly appeal his conviction and sentence, leaving him to retain new counsel and creating additional procedural hurdles in his quest for federal habeas relief.

{¶ 19} Moreover, the board could not reconcile Bennett's testimony regarding his litigation strategy with his actions. He testified that he intended to file a delayed appeal followed by a petition for postconviction relief on Kelley's behalf. Yet he received payments totaling $4,500, filed a single-page motion for delayed appeal with a one-page supporting affidavit, and then told his client that his representation was complete—without even mentioning the possibility of filing a petition for post-conviction relief in state court.

{¶ 20} Mitigating factors include Bennett's cooperative attitude toward the disciplinary proceedings and strong evidence of his character and reputation from a significant number of lawyers and judges, though few of those letters suggest that their authors have specific knowledge of the misconduct alleged in this case. *See*

6

Gov.Bar R. V(13)(C)(4) and (5). The board also attributed mitigating effect to Bennett's payment of $4,500 in full restitution to Kelley's family, *see* Gov.Bar R. V(13)(C)(3), the fact that his misconduct did not procedurally bar his client's federal habeas action, his sincere and contrite appearance during his hearing testimony, and his acceptance of responsibility for his misconduct.

{¶ 21} The board recommends that the appropriate sanction for Bennett's misconduct is a six-month suspension from the practice of law. In support of that sanction, the board cites six cases in which we have imposed one-year suspensions with six months stayed on conditions on attorneys who, like Bennett, made false or misleading statements to a court. *See Disciplinary Counsel v. Schuman*, 152 Ohio St.3d 47, 2017-Ohio-8800, 92 N.E.3d 850; *Disciplinary Counsel v. Shaffer*, 98 Ohio St.3d 342, 2003-Ohio-1008, 785 N.E.2d 429; *Toledo Bar Assn. v. Miller*, 132 Ohio St.3d 63, 2012-Ohio-1880, 969 N.E.2d 239; *Disciplinary Counsel v. Rohrer*, 124 Ohio St.3d 65, 2009-Ohio-5930, 919 N.E.2d 180; *Toledo Bar Assn. v. DeMarco*, 144 Ohio St.3d 248, 2015-Ohio-4549, 41 N.E.3d 1237; and *Warren Cty. Bar Assn. v. Vardiman*, 146 Ohio St.3d 23, 2016-Ohio-352, 51 N.E.3d 587.

{¶ 22} While each of those attorneys engaged in conduct similar to Bennett's, we find that just one of them had prior discipline—for a brief attorney-registration suspension—and none of them had committed prior offenses involving dishonesty, fraud, deceit, or misrepresentation, as Bennett has. *Vardiman* at ¶ 13.

{¶ 23} We have recognized that the primary purpose of a disciplinary sanction is not to punish the offender, but to protect the public by demonstrating that this type of conduct will not be tolerated. *See*, *e.g.*, *Schuman* at ¶ 17. But we have also acknowledged:

> If a prior attempt at discipline has been ineffective to provide the protection intended for the public, then such further safeguards should be imposed as will either tend to effect the reformation of the

offender or remove him entirely from the practice. The discipline for a repeated offense may be much greater than would have been imposed were it a first offense, yet such greater discipline is not a meting out of further punishment for prior acts but is a determination of the attorney's fitness to practice.

*In re Disbarment of Lieberman*, 163 Ohio St. 35, 41, 125 N.E.2d 328 (1955); *see also Disciplinary Counsel v. Dann*, 134 Ohio St.3d 68, 2012-Ohio-5337, 979 N.E.2d 1263, ¶ 20.

{¶ 24} Here, Bennett has a prior indefinite suspension for engaging in dishonest conduct that also resulted in a felony conviction and a two-year prison term, and he has gone on to engage in additional dishonesty and misrepresentation just four years after being reinstated to the practice of law. Therefore, we conclude that this misconduct warrants a greater sanction than the six-month suspension recommended by the board or the one-year suspensions with six months stayed on conditions that we imposed in the cases relied upon by the board.

{¶ 25} Accordingly, Clyde Bennett II is suspended from the practice of law in Ohio for one year. Costs are taxed to Bennett.

Judgment accordingly.

O'CONNOR, C.J., and O'DONNELL, FISCHER, and DEGENARO, JJ., concur.

KENNEDY, FRENCH, and DEWINE, JJ., dissent and would suspend the respondent from the practice of law for six months.

_____

Scott J. Drexel, Disciplinary Counsel, and Donald M. Sheetz, Assistant Disciplinary Counsel, for relator.

Montgomery, Rennie, and Jonson, L.P.A., George D. Jonson, and Lisa M. Zaring, for respondent.

_____