**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Toledo Bar Assn. v. Driftmyer*, **Slip Opinion No. 2024-Ohio-540.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2024-OHIO-540

TOLEDO BAR ASSOCIATION *v.* DRIFTMYER.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Toledo Bar Assn. v. Driftmyer*, Slip Opinion No. 2024-Ohio-540.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct, including failing to inform client of lack of professional-liability insurance—One-year suspension and restitution ordered.*

(No. 2023-0978—Submitted September 12, 2023—Decided February 15, 2024.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2022-044.

_____

**Per Curiam.**

{¶ 1} Respondent, Sarah Ann Miller Driftmyer, Attorney Registration No. 0089222, whose last known address was in Toledo, Ohio, was admitted to the practice of law in Ohio in 2012.

**{¶ 2}** On December 20, 2018, we suspended Driftmyer from the practice of law for six months with the entire suspension stayed on conditions. *Wood Cty. Bar Assn. v. Driftmyer*, 155 Ohio St.3d 603, 2018-Ohio-5094, 122 N.E.3d 1262. In that case, we found that Driftmyer failed to provide diligent representation to a client, failed to maintain and utilize a client trust account, failed to inform her client that she did not carry professional-liability insurance, failed to maintain a copy of her written fee agreement with that client, and failed to timely respond to the relator's investigation of her misconduct. The conditions of the stay included requirements that Driftmyer submit to a substance-abuse and mental-health assessment conducted by the Ohio Lawyers Assistance Program ("OLAP"), comply with all treatment recommendations arising from that assessment, and serve a one-year term of monitored probation under Gov.Bar R. V(21). *Id.* at ¶ 22. We denied Driftmyer's application for termination of her monitored probation on June 8, 2021. 163 Ohio St.3d 1443, 2021-Ohio-1924, 168 N.E.3d 1200.

**{¶ 3}** In an April 2023 amended complaint, relator, Toledo Bar Association, charged Driftmyer with multiple ethical violations arising from her representation of clients in two additional legal matters. Among other things, relator alleged that Driftmyer failed to provide competent representation, engaged in dishonest conduct and knowingly made a false statement of fact to a tribunal, improperly handled a client's advanced-fee payment, failed to inform either client that she did not carry professional-liability insurance, and knowingly failed to respond to relator's investigation of her misconduct.

**{¶ 4}** The parties submitted stipulations of fact, misconduct, and aggravating and mitigating factors as well as 27 stipulated exhibits. The matter proceeded to a hearing before a three-member panel of the Board of Professional Conduct. Before commencing its case-in-chief, relator moved to dismiss one alleged rule violation, and the panel unanimously granted that motion. Based on the stipulations and evidence, including Driftmyer's testimony, the panel issued a

report finding that she had committed the other charged misconduct and recommending that she be suspended from the practice of law for one year and ordered to make restitution to one of her clients, complete certain continuing-legal-education ("CLE") requirements, and serve a period of monitored probation upon her reinstatement to the profession. The board adopted the panel's findings of fact, conclusions of law, and recommended sanction.

{¶ 5} After a thorough review of the record and our applicable precedent, we adopt the board's findings of misconduct and its recommended sanction.

## MISCONDUCT

### Count I: The Reynolds Matter

{¶ 6} In January 2021, Ralpheal Reynolds contacted Driftmyer to inquire about filing a motion for judicial release in his 2018 criminal case. Although she verbally agreed to represent Reynolds, Driftmyer did not have him sign a written fee agreement, and the terms of her representation are now disputed. Reynolds states that Driftmyer agreed to represent him for a flat fee of $250, while Driftmyer claims that the agreed fee was $500, with an initial payment of $250 and a second $250 payment that would be due when the motion was filed.

{¶ 7} Reynolds paid Driftmyer $250 through a third party. But Driftmyer did not inform Reynolds in writing that he may be entitled to a refund of all or part of the fee if she failed to complete the representation for any reason, nor did she inform him that she did not carry professional-liability insurance. Furthermore, Driftmyer failed to deposit the fee into her client trust account.

{¶ 8} According to the parties' stipulations, Driftmyer drafted the motion and informed Reynolds that she required an additional payment of $250 to file it. She never filed the motion, however, because she did not receive the additional payment. In April 2021, Reynolds filed a grievance with relator alleging that Driftmyer had failed to respond to his multiple attempts to communicate with her, failed to complete the representation, and failed to refund the unearned fee.

{¶ 9} Relator sent Driftmyer its first letter of inquiry regarding Reynolds's grievance in May 2021 and requested a response within 15 days. Despite relator's additional efforts to communicate with Driftmyer, she did not submit a written response to the grievance until mid-August 2021. During an interview conducted by relator's investigator in September, Driftmyer stated that she carried professional-liability insurance during her representation of Reynolds; she agreed to provide documentation of that fact to relator, along with copies of her client file, emails between herself and Reynolds, and phone-call logs. She did not provide any of the promised documentation to relator—or otherwise communicate with relator regarding that failure—until after relator filed its complaint. And although Driftmyer later discovered that her professional-liability insurance had lapsed well before she accepted Reynolds's representation, she did not inform the investigator of that fact until relator subpoenaed records related to her professional-liability insurance. Those records showed that she maintained professional-liability insurance from March 2, 2022, until March 2, 2023. And although Driftmyer offered to refund Reynolds's $250 payment during relator's investigation, at the time of her disciplinary hearing, she had not issued the refund.

{¶ 10} The parties stipulated and the board found by clear and convincing evidence that Driftmyer's conduct violated Prof.Cond.R. 1.4(a)(3) (requiring a lawyer to keep a client reasonably informed about the status of a matter), 1.4(a)(4) (requiring a lawyer to comply as soon as practicable with a client's reasonable requests for information), 1.4(c) (requiring a lawyer to inform a client if the lawyer does not maintain professional-liability insurance and to obtain a signed acknowledgment of that notice from the client), 1.5(d)(3) (prohibiting a lawyer from charging a fee denominated as "earned upon receipt," "nonrefundable," or in any similar terms without simultaneously advising the client in writing that the client may be entitled to a refund of all or part of the fee if the lawyer does not complete the representation), 1.15(c) (requiring a lawyer to deposit advance legal

fees and expenses into a client trust account, to be withdrawn by the lawyer only as fees are earned or expenses incurred), 1.15(e) (requiring a lawyer in possession of funds in which two or more persons claim an interest to hold those funds in the lawyer's client trust account until the dispute is resolved), and 8.1(b) (prohibiting a lawyer from failing to disclose a material fact or knowingly failing to respond to a demand for information by a disciplinary authority during an investigation). We adopt these findings of misconduct.

### Count II: The Dunsmore and Ross Matter

{¶ 11} In 2020, Diana Dunsmore wanted to sell her home in Toledo herself. April Ross ("Ross") and her husband, Alvin, became interested in purchasing the home. Driftmyer had previously represented Ross but never in a real-estate matter.

{¶ 12} In September 2020, the Rosses arrived at the home with Driftmyer for a presale inspection. During that inspection, the Rosses and Dunsmore agreed on sale terms and decided that Driftmyer would draft the documents necessary for the sale and purchase of the home.

{¶ 13} At the time of the inspection, Dunsmore believed that she was representing herself and that Driftmyer was acting as the Rosses' attorney. Driftmyer claims that she was not representing the Rosses at that time and that she was present only to notarize documents. But at the end of the inspection, Driftmyer provided the parties with a half-page handwritten sales agreement stating that the Rosses were to pay off Dunsmore's $59,000 home-equity loan and make a cash payment of $88,500 to purchase the property. The Rosses and Dunsmore signed the agreement, which failed to recite the standard terms set forth in the form agreement for the purchase of residential real estate that relator and the Toledo Board of Realtors make available online at no cost. Issues later arose regarding additional terms of the sale, including the date that the Rosses would take possession of the property, the proration of real-estate taxes, who was responsible for necessary repairs, and which appliances were included in the sale.

**{¶ 14}** Sometime after the Rosses and Dunsmore signed the agreement, Driftmyer was asked to prepare the deed. Despite Driftmyer's past representation of Ross, her apparent representation of the Rosses in the purchase of Dunsmore's home, and her contention that she was not representing Dunsmore, Driftmyer prepared a quitclaim deed on Dunsmore's behalf. Upon Dunsmore's request, Driftmyer made certain modifications to the deed.

**{¶ 15}** By October 6, 2020, the Rosses had paid Dunsmore's home-equity loan in full, Dunsmore had signed the deed, and Driftmyer had presented Dunsmore with an $88,500 check from the Rosses. It was agreed that the Rosses would take possession of the real property by October 12. But the Rosses became dissatisfied with the condition of the premises and Dunsmore's retention of the check. Moreover, when Dunsmore attempted to deposit the check on October 7, the bank informed her that there would be a ten-day waiting period for the check to clear. Consequently, Dunsmore informed the Rosses that she would not deliver possession of the property until their check cleared. Ross stopped payment on the check, claiming a concern that it had been lost, and proceeded to have Driftmyer record the deed. Ross also served Dunsmore with an eviction notice.

**{¶ 16}** Sometime after Driftmyer recorded the deed, she learned that Ross had stopped payment on the check. Despite her knowledge that the Rosses had not paid the agreed price for the property, Driftmyer filed a complaint for forcible entry and detainer against Dunsmore in the Toledo Municipal Court. Then, during a November 2020 hearing on the matter at which Dunsmore appeared pro se, Driftmyer presented the recorded deed to the court and argued that the Rosses were entitled to possession as owners of the property. During her disciplinary hearing, Driftmyer claimed that the Rosses had taken two checks to the municipal-court hearing that together represented the balance owed to Dunsmore under the purchase agreement. Although Driftmyer stated that she had held up envelopes containing the checks to show the court that the Rosses had brought them, she acknowledged

6

that she never gave the checks to Dunsmore or the court. The court ultimately dismissed the Rosses' eviction action.

{¶ 17} After Ross expressed a desire to pursue further litigation against Dunsmore in common pleas court, Driftmyer terminated her representation, explaining that she handles only criminal matters in the Lucas County Court of Common Pleas. Ross retained new counsel and filed suit against Dunsmore, who then joined Driftmyer as a third-party defendant in the action. That action remained pending at the time of Driftmyer's disciplinary hearing. Ross also filed a professional-malpractice action against Driftmyer in the same court. Driftmyer did not file an answer to that complaint, and a default judgment was entered against her. During her disciplinary hearing, Driftmyer testified that she intends to file a motion to set aside that judgment.

{¶ 18} The parties stipulated and the board found by clear and convincing evidence that Driftmyer's conduct violated Prof.Cond.R. 1.1 (requiring a lawyer to provide competent representation to a client by utilizing the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation), 1.4(c), 3.3(a)(1) (prohibiting a lawyer from knowingly making a false statement of fact or law to a tribunal), 4.3 (prohibiting a lawyer from giving legal advice to an unrepresented person other than the advice to secure counsel if the lawyer knows or reasonably should know that the interests of the unrepresented person are in conflict with the interests of a client of the lawyer), and 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). We adopt these findings of misconduct.

## SANCTION

{¶ 19} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

**{¶ 20}** The parties stipulated and the board found that seven aggravating factors are present in this case—namely, Driftmyer (1) has a history of prior discipline, (2) engaged in a pattern of misconduct, (3) committed multiple offenses, (4) engaged in persistent delays with respect to relator's investigation that are tantamount to a failure to cooperate in the disciplinary process, (5) submitted a false statement during the disciplinary process regarding the status of her professional-liability insurance, (6) caused harm to vulnerable victims, and (7) failed to make restitution to Reynolds. *See* Gov.Bar R. V(13)(B)(1), (3) through (6), (8), and (9).

**{¶ 21}** As for mitigating factors, the parties stipulated that Driftmyer had not acted with a dishonest or selfish motive, in that she was careless rather than willfully deceptive when she told relator's investigator that she had professional-liability insurance at the time she represented Reynolds when, in fact, that insurance had expired well before she commenced that representation. *See* Gov.Bar R. V(13)(C)(2). The board adopted that factor and also found that once Driftmyer had begun to participate in the disciplinary proceedings, she made full disclosure to the board and exhibited a cooperative attitude toward the disciplinary proceedings. *See* Gov.Bar R. V(13)(C)(4).

**{¶ 22}** Relator recommended that Driftmyer be suspended for two years with no stay. While Driftmyer conceded that an actual suspension is appropriate under the circumstances of this case, she did not propose a duration.

**{¶ 23}** In determining the appropriate sanction for Driftmyer's misconduct, the board considered several cases in which we imposed a partially stayed one- or two-year suspension for misconduct bearing some resemblance to that of Driftmyer. In two of those cases—*Toledo Bar Assn. v. Miller*, 132 Ohio St.3d 63, 2012-Ohio-1880, 969 N.E.2d 239, and *Toledo Bar Assn. v. DeMarco*, 144 Ohio St.3d 248, 2015-Ohio-4549, 41 N.E.3d 1237—we imposed one-year suspensions with six months conditionally stayed on attorneys whose misconduct consisted largely of making false statements to tribunals. Miller made false statements on

behalf of his employer in an action seeking to garnish his wages, made false statements regarding his income in his pending bankruptcy proceeding, and used funds belonging to a client of his firm to pay a filing fee on behalf of a nonfirm pro bono client. And DeMarco knowingly made a series of false statements to a court claiming that he had never possessed certain discovery materials when, in fact, he had possessed them at one time. However, Miller and DeMarco each violated just three professional-conduct rules, compared to the 12 rule violations we have found in this case. *See Miller* at ¶ 10; *DeMarco* at ¶ 7. And unlike Driftmyer, neither of them had a history of prior discipline, failed to cooperate in the investigation of their misconduct, caused harm to a client, or failed to make restitution. *See Miller* at ¶ 12; *DeMarco* at ¶ 9.

{¶ 24} In two other cases considered by the board—*Lorain Cty. Bar Assn. v. Nelson*, 168 Ohio St.3d 596, 2022-Ohio-1288, 200 N.E.3d 1039, and *Stark Cty. Bar Assn. v. Arkow*, 168 Ohio St.3d 218, 2022-Ohio-3209, 197 N.E.3d 554—we imposed two-year suspensions with one year conditionally stayed, combined with periods of monitored probation after reinstatement, on attorneys with prior discipline who, in addition to making false statements to either a tribunal or a client, engaged in other acts of misconduct similar to some of those committed by Driftmyer. While Nelson was on probation for prior disciplinary violations related to his handling of a client's unearned fee, he failed to deposit unearned fees from 18 other clients into his client trust account—compared to Driftmyer's single incident of such misconduct. Then, during an investigation of his alleged misconduct, Nelson filed in this court an application to terminate his probation in which he knowingly made the false statement that there were no disciplinary proceedings pending against him. Like Driftmyer, in addition to a prior two-year suspension for similar client-trust-account violations, Nelson engaged in a pattern of misconduct, committed multiple offenses, and failed to cooperate in the disciplinary investigation. *See Nelson* at ¶ 1, 23. In contrast to Driftmyer, who

stipulated to her misconduct, Nelson refused to acknowledge the wrongfulness of his conduct. *See id.*

{¶ 25} Arkow committed nine ethical violations by neglecting two client matters, failing to reasonably communicate with those clients, lying to one of those clients and the relator about the status of the client's case, and falsifying documents to conceal his inaction. In addition to an earlier conditionally stayed one-year suspension for similar instances of neglect, Arkow, like Driftmyer, engaged in a pattern of misconduct involving multiple offenses and submitted false statements during the disciplinary process. *See Arkow* at ¶ 12. Although Arkow acted with a dishonest or selfish motive, which has not been found in this case, he also made timely restitution to his clients and submitted evidence of his good character. *See id.* at ¶ 12-13.

{¶ 26} After considering *Miller*, *DeMarco*, *Nelson*, and *Arkow*, however, the board found the facts of this case to be most analogous to those of *Disciplinary Counsel v. Bennett*, 154 Ohio St.3d 314, 2018-Ohio-3973, 114 N.E.3d 167. Bennett agreed to appeal to this court an appellate-court judgment affirming a client's criminal convictions for a flat fee of $5,000. He did not reduce the fee agreement to writing and failed to inform the client that he did not intend to begin the work until he had been paid. Bennett deposited a $2,500 payment he had received from the client's family into his operating account without informing the family that they could be entitled to a refund if he did not complete the representation.

{¶ 27} Instead of filing a timely direct appeal in this court to exhaust the client's state-court remedies, Bennett unilaterally decided that filing a petition for postconviction relief followed by a federal habeas corpus petition was a better course of action. After he received another $1,000 payment, he filed a perfunctory one-page motion for delayed appeal in this court. He later admitted that he had intentionally omitted relevant information from that motion for the purpose of misleading a federal court considering a subsequent habeas petition into believing

that he had made a good-faith effort to pursue all of the client's state remedies. This court denied the client's motion for delayed appeal. While a federal district court found that Bennett's deficient representation excused the client's failure to timely appeal his convictions to this court, it nonetheless dismissed his habeas petition on other grounds.

{¶ 28} We found that Bennett failed to provide his client with competent representation, failed to keep the client reasonably informed about the status of the client's legal matter, improperly denominated his fee as earned upon receipt, and engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation. *Id.* at ¶ 13. Like Driftmyer's conduct in the Reynolds matter, Bennett's misconduct consisted of multiple offenses and was directed toward a vulnerable criminal defendant. *See id.* at ¶ 16. In addition to cooperating in the disciplinary proceeding as Driftmyer did here and accepting responsibility for his misconduct, Bennett also submitted strong character evidence and made full restitution to his client. *See id.* at ¶ 19. But in contrast to Driftmyer's prior stayed six-month suspension, Bennett's prior suspension was indefinite and was imposed for other dishonest conduct that also resulted in a felony conviction and two-year prison term. *See id.* at ¶ 23. On those facts, we suspended Bennett from the practice of law for one year with no stay. *Id.* at ¶ 23-24.

{¶ 29} In this case, the board found that the two-year suspension recommended by the relator was "overly punitive." But considering the number of the aggravating factors present in this case—particularly, the harm caused to the affected clients, the absence of restitution, and the fully stayed suspension we imposed for Driftmyer's prior instance of similar misconduct—along with the comparative scarcity of mitigating factors, the board concluded that a one-year suspension with no stay, as imposed in *Bennett*, is necessary to protect the public from future harm. The board also recommends that Driftmyer be required to pay $250 in restitution to Reynolds within 60 days.

**{¶ 30}** In addition, the board recommends that Driftmyer's reinstatement to the profession be conditioned on the submission of proof that she has completed one hour of CLE focused on law-office management and three hours of CLE focused on criminal law, in addition to the requirements of Gov.Bar R. X. Furthermore, the board recommends that upon reinstatement to the profession, Driftmyer be required to serve a one-year period of monitored probation focused primarily on client-trust-account management and compliance with the OLAP assessment ordered in her prior disciplinary case.

**{¶ 31}** Having thoroughly reviewed the record and the precedent discussed above, we agree that the appropriate sanction for Driftmyer's misconduct is a one-year suspension with no stay, combined with the requirements that she pay $250 in restitution to Reynolds, complete four hours of CLE in addition to the requirements of Gov.Bar R. X, and serve a one-year period of monitored probation upon her reinstatement to the profession.

## CONCLUSION

**{¶ 32}** Accordingly, Sarah Ann Miller Driftmyer is suspended from the practice of law in Ohio for one year and ordered to pay $250 in restitution to Ralpheal Reynolds within 60 days. In addition to the requirements for reinstatement set forth in Gov.Bar R. V(24) and the general CLE requirements of Gov.Bar R. X, Driftmyer shall be required to submit proof that she has made restitution to Reynolds and completed one hour of CLE focused on law-office management and three hours of CLE focused on criminal law. Upon reinstatement, she shall serve a one-year period of monitored probation in accordance with Gov.Bar R. V(21) to be focused primarily on her client-trust-account management and compliance with the OLAP assessment and any treatment recommendations arising therefrom as ordered by this court in *Wood Cty. Bar Assn. v. Driftmyer*, 155 Ohio St.3d 603, 2018-Ohio-5094, 122 N.E.3d 1262. Costs are taxed to Driftmyer.

Judgment accordingly.

KENNEDY, C.J., and FISCHER, DEWINE, DONNELLY, STEWART, and DETERS, JJ., concur.

BRUNNER, J., not participating.

_____

Margaret Mattimoe Sturgeon, Bar Counsel, and Christopher F. Parker, Assistant Bar Counsel, for relator.

Sarah Miller Driftmyer, pro se.

_____