**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as**
*Stark Cty. Bar Assn. v. Arkow*, **Slip Opinion No. 2022-Ohio-3209.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2022-OHIO-3209

STARK COUNTY BAR ASSOCIATION *v*. ARKOW.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Stark Cty. Bar Assn. v. Arkow*, Slip Opinion No. 2022-Ohio-3209.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct—Two-year suspension with one year stayed on conditions.*

(No. 2022-0716—Submitted July 12, 2022—Decided September 15, 2022.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2021-033.

————————

**Per Curiam.**

{¶ 1} Respondent, Seth Walter Arkow, of Canton, Ohio, Attorney Registration No. 0069103, was admitted to the practice of law in Ohio in 1998.  In December 2004, we suspended him for one year, stayed on conditions, based on findings that he neglected two client matters, intentionally failed to carry out a contract of employment, engaged in an improper ex parte communication in a third

client's case, and failed to respond to a letter of inquiry regarding one of those matters. *Stark Cty. Bar Assn. v. Arkow*, 104 Ohio St.3d 265, 2004-Ohio-6512, 819 N.E.2d 284.

{¶ 2} In a December 2021 complaint, relator, Stark County Bar Association, alleged that Arkow neglected two client matters, failed to reasonably communicate with those clients about the status of the matters, lied to one of those clients about the status of her matter, and made false statements of material fact to relator.

{¶ 3} A three-member panel of the Board of Professional Conduct was appointed to hear the case. The parties submitted stipulations of fact, misconduct, and aggravating and mitigating factors. They recommended that Arkow be suspended from the practice of law for two years, with the second year conditionally stayed, and that he be required to serve one year of monitored probation. Based on the stipulations and Arkow's hearing testimony, the panel found that Arkow committed the charged misconduct. The panel recommended that we impose the sanction suggested by the parties and that we place additional conditions on his reinstatement to the practice of law. The board adopted the panel's findings of fact, conclusions of law, and recommended sanction. The parties have jointly waived objections to the board's report and recommendation.

{¶ 4} We adopt the board's findings of misconduct and recommended sanction.

### Stipulated Facts and Misconduct

*Count I—The Hall Matter*

{¶ 5} In March 2019, Karen R. Hall hired Arkow to represent her in her divorce. That November, Hall paid Arkow an additional fee of $400 to obtain a qualified domestic relations order ("QDRO") to divide her former husband's retirement account. The fee included the expense of hiring QDRO Group to prepare that order.

**{¶ 6}** In April 2020, Arkow sent Hall an email stating that he had not heard anything about the QDRO and speculating that it had been delayed due to the COVID-19 pandemic. That statement was false, however, because Arkow had never submitted Hall's information to QDRO Group. In response to Hall's email inquiries about the status of her case in the following months, Arkow falsely assured Hall that he was checking the status of the QDRO every few weeks and that it was in process. He claimed that QDRO Group was short-staffed as a result of the pandemic and that he would let her know when he received the document. However, Arkow did not respond to Hall's subsequent inquiry about the status of the matter or her request for a copy of the documents he had purportedly furnished to QDRO Group.

**{¶ 7}** In October 2020, Hall informed Arkow that she would be filing a grievance against him. In response, Arkow sent her an email stating that he had submitted the documents to QDRO Group, that he had called the company from time to time to check on its progress, and that the company had indicated that it would get back to him shortly. Those statements were false. Shortly thereafter, Arkow wrote a $400 check from his client trust account to QDRO Group along with a letter to the company and backdated both documents to make it appear that he had written them nearly a year earlier. After mailing the falsely dated documents to QDRO Group, he sent copies of the documents to Hall with the intent to mislead her about the timeliness of his actions. In response to relator's letter of inquiry, Arkow falsely asserted that he had timely submitted Hall's payment and documents to QDRO Group.

**{¶ 8}** In October 2021, relator deposed Arkow. Before relator commenced its questioning, Arkow admitted for the first time that he had not timely transmitted Hall's payment and documents to QDRO Group and that he had misrepresented his actions to both Hall and relator. He then confirmed those actions under oath. Hall

paid another attorney $300 to complete the filing, and Arkow reimbursed her for the cost of those services.

**{¶ 9}** The parties stipulated and the board found that Arkow's conduct violated Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence in representing a client), 1.4(a)(3) (requiring a lawyer to keep a client reasonably informed about the status of a matter), 1.4(a)(4) (requiring a lawyer to comply as soon as practicable with reasonable requests for information from the client), 8.1(a) (prohibiting a lawyer from knowingly making a false statement of material fact in connection with a disciplinary matter), and 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). We adopt these findings of misconduct.

*Count II—The Kimble Matter*

**{¶ 10}** In March 2020, another of Arkow's clients, Kayla Kimble, paid him $400 to finalize a QDRO. But Arkow never submitted her paperwork to QDRO Group for processing. Although Kimble inquired about the status of the QDRO several times over the next eight months, Arkow responded just once to falsely inform her, "Just got word, looks like they are catching up. I should have something for you to sign next week." After Kimble filed a June 2021 grievance against Arkow and obtained new counsel to finalize the QDRO, Arkow refunded her $400 payment. The parties stipulated and the board found that this conduct violated Prof.Cond.R. 1.3, 1.4(a)(3), 1.4(a)(4), and 8.4(c). We adopt these findings of misconduct.

**Sanction**

**{¶ 11}** When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the attorney violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

**{¶ 12}** As aggravating factors, the parties and the board cited Arkow's prior discipline, dishonest or selfish motive, pattern of misconduct, multiple offenses, and submission of false evidence and false statements during the disciplinary process. *See* Gov.Bar R. V(13)(B)(1) through (4) and (6). The board noted that although Arkow's prior disciplinary case occurred 18 years earlier, it involved the same types of misconduct that are at issue here—neglect of a client's QDRO coupled with misrepresentations about that conduct in the course of the ensuing disciplinary investigation.

**{¶ 13}** As for mitigating factors, the board accepted the parties' stipulations that Arkow had made timely restitution to Hall and Kimble, made full and free disclosure to the board, and submitted letters from a judge and two attorneys attesting to his good character. *See* Gov.Bar R. V(13)(C)(3), (4), and (5).

**{¶ 14}** At his disciplinary hearing, Arkow testified that his first disciplinary offense occurred when he was a young lawyer, that it had been resolved by stipulations, and that he had not been required to testify before a panel of the board. He suggested that because that case had been resolved by stipulations and without a formal hearing, he did not take the case as seriously as he should have. He testified that he is a different person now and that being deposed and testifying in the formal hearing in this case had made him appreciate the gravity of the situation. When asked why he had decided to "come clean" during the disciplinary process, he stated, "[I]t just hit me that what I'm doing is wrong. * * * I was not living up to my oath as a leader, as a lawyer, and as a good citizen."

**{¶ 15}** Although Arkow acknowledged that his only responsibility with respect to the QDROs was to pay a fee and send the required documents to QDRO Group so that the company's experts could prepare the required order, he testified that he had "procrastinated working on [QDROs]" because he had never fully understood them and had been afraid that he would "mess them up." In the wake of this disciplinary proceeding, Arkow has taken some affirmative action to change

his behavior: he has started using an office-management software program to help him stay organized and on task, and in the summer of 2021, he commenced therapy to address his procrastination. His therapist submitted a written report stating that she had diagnosed him with adjustment disorder with mixed anxiety and depressed mood and that she saw him 11 times from August 2021 through April 2022. The therapist reported that Arkow was "intent on working to make genuine and true change to his thinking and behavior" and was "making good progress in therapy." She offered that his overall prognosis to learn from this matter and continue to practice law "in the most honest and ethical manner" was "very good." She did not, however, opine that Arkow's disorder had contributed to his misconduct. Nor did Arkow seek to establish his disorder as a mitigating factor pursuant to Gov.Bar R. V(13)(C)(7).

{¶ 16} The parties recommended that Arkow be suspended from the practice of law for two years, with one year stayed on the conditions that he commit no further misconduct and that he be required to serve one year of monitored probation. In support of that recommendation, they cited six cases in which we imposed term suspensions ranging from one to two years with some portion of the suspension conditionally stayed. Of those cases, the board found *Disciplinary Counsel v. Gildee*, 134 Ohio St.3d 374, 2012-Ohio-5641, 982 N.E.2d 704, *Cincinnati Bar Assn. v. Moore*, 143 Ohio St.3d 252, 2015-Ohio-2488, 36 N.E.3d 171, and *Disciplinary Counsel v. Karp*, 156 Ohio St.3d 218, 2018-Ohio-5212, 124 N.E.3d 819, to be most instructive.

{¶ 17} In *Gildee*, the attorney misappropriated client funds, made misrepresentations to the relator regarding the status of those funds, and fabricated documents to support her lies. Many of the aggravating and mitigating factors that are present in this case were also present in *Gildee*, but in contrast to Arkow, Gildee had no history of prior discipline. We suspended Gildee for two years but stayed

the second year of that suspension on the condition that she commit no further misconduct.

{¶ 18} In *Moore*, we imposed that same sanction (albeit with additional conditions) on an attorney for engaging in multiple instances of shoplifting by scanning UPC codes that he had carried into a store to purchase expensive bottles of wine at a self-scan checkout register. He then submitted false statements about those incidents during the ensuing disciplinary investigation—including at least one instance in which he was under oath. In addition to having several of the aggravating factors that are present here, Moore failed to cooperate in the disciplinary process and failed to make restitution until shortly before his disciplinary hearing. He was also unwilling to accept responsibility for his misconduct. The primary mitigating factors were that Moore had no prior discipline and other sanctions had been imposed for his misconduct.

{¶ 19} The board found that Arkow's misconduct was most similar to that in *Karp*, 156 Ohio St.3d 218, 2018-Ohio-5212, 124 N.E.3d 819. Karp failed to timely file a work-visa petition for a client, failed to reasonably consult with the client about the means by which her objectives were to be accomplished, and failed to explain the matter to the extent reasonably necessary to permit her to make informed decisions. He also engaged in a pattern of misrepresentations in which he lied to his client, her employer, the relator, and the federal government. In addition to that misconduct, Karp impermissibly commingled personal and client funds in his client trust account. For Karp's misconduct, we imposed a two-year suspension with 18 months stayed on conditions. But while Karp's misconduct involved a single client, Arkow's misconduct affected two clients and was virtually identical to misconduct for which he has previously been disciplined. Moreover, Arkow did not establish the existence of a mitigating mental disorder, as Karp did.

{¶ 20} On the authority of *Gildee*, *Moore*, and *Karp*, the board found that the parties' jointly recommended sanction of a two-year suspension, with one year

conditionally stayed, combined with a one-year period of monitored probation is a fair and appropriate sanction for Arkow's misconduct. Based on the particular facts of this case, however, the board further recommends that the stay be conditioned on Arkow's continued engagement in regular mental-health treatment as recommended by his therapist or other qualified healthcare professional. The board also recommends that in addition to the standard conditions for reinstatement, Arkow be required to submit (1) proof that he has completed eight hours of continuing legal education ("CLE"), in addition to the requirements of Gov.Bar R. V(24), with five of those hours focused on QDROs, two hours focused on ethics, and one hour focused on law-office management, and (2) an opinion from his therapist or another qualified healthcare professional that he is capable of resuming the competent, ethical, and professional practice of law.

{¶ 21} After independently reviewing the record in this case and our precedent, we agree that the board's recommended sanction is the appropriate sanction for Arkow's misconduct.

**Conclusion**

{¶ 22} Accordingly, Seth Walter Arkow is suspended from the practice of law for two years, with one year stayed on the conditions that he commit no further misconduct and continue to engage in regular mental-health treatment as recommended by his therapist or another qualified healthcare professional. If Arkow fails to comply with either condition of the stay, the stay will be lifted and he will serve the full two-year suspension. In addition to the conditions of reinstatement set forth in Gov.Bar R. V(24), Arkow shall be required to submit (1) proof that he has completed eight hours of CLE in addition to the requirements of Gov.Bar R. X, with five of those hours focused on QDROs, two hours focused on ethics, and one hour focused on law-office management, and (2) an opinion from his therapist or another qualified healthcare professional that he can return to the competent, ethical, and professional practice of law. Upon reinstatement, Arkow

shall serve one year of monitored probation in accordance with Gov.Bar R. V(21). Costs are taxed to Arkow.

Judgment accordingly.

O'CONNOR, C.J., and KENNEDY, FISCHER, DEWINE, DONNELLY, STEWART, and BRUNNER, JJ., concur.

————————————

Buckingham, Doolittle & Burroughs, L.L.C., and Jude B. Streb; and Richard S. Milligan, Bar Counsel, for relator.

The Coughlan Law Firm, L.L.C., and Jonathan E. Coughlan, for respondent.

————————————