[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Columbus Bar Assn. v. Ryan*, Slip Opinion No. 2024-Ohio-5570.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2024-OHIO-5570

COLUMBUS BAR ASSOCIATION *v.* RYAN.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Columbus Bar Assn. v. Ryan*, Slip Opinion No. 2024-Ohio-5570.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct— Conditionally stayed one-year suspension.*

(No. 2024-1099—Submitted September 3, 2024—Decided November 27, 2024.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2023-039.

_____

The per curiam opinion below was joined by KENNEDY, C.J., and FISCHER, DEWINE, DONNELLY, STEWART, and DETERS, JJ. BRUNNER, J., did not participate.

**Per Curiam.**

{¶ 1} Respondent, Corinne Noelle Ryan, of Gahanna, Ohio, Attorney Registration No. 0066393, was admitted to the practice of law in Ohio in 1996. On

June 2, 2015, we publicly reprimanded Ryan for neglecting two client matters and for failing to reasonably communicate with those clients. *Columbus Bar Assn. v. Ryan*, 2015-Ohio-2069, ¶ 1, 6.

{¶ 2} On November 15, 2023, relator, Columbus Bar Association, filed a two-count complaint with the Board of Professional Conduct alleging that Ryan had neglected a client's divorce matter, failed to reasonably consult and communicate with the client, knowingly made false statements of material fact to the client, and engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation. Relator also alleged that after the client filed a grievance with relator, Ryan attempted to interfere with the investigation into the alleged misconduct.

{¶ 3} Ryan waived a probable-cause determination, and the parties entered into stipulations of fact, two rule violations (Prof.Cond.R. 1.3 and 1.4(a)(3)), and aggravating and mitigating factors. The parties also jointly recommended a sanction of a stayed suspension. After a hearing before a three-member panel of the board, the panel issued a report finding that Ryan had committed some of the misconduct alleged and unanimously dismissing charges involving other rule violations. The panel unanimously dismissed charges alleging that Ryan violated Prof.Cond.R. 1.4(a)(2) (requiring a lawyer to reasonably consult with a client about the means by which a client's objectives are to be accomplished), 4.1(a) (prohibiting a lawyer from knowingly making a false statement of material fact or law to a third person),[1] and 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law). The panel then recommended that Ryan be suspended from the practice of law for one year, with

---

1. The panel unanimously dismissed one charged violation of Prof.Cond.R. 4.1(a) under Count 1 of the complaint, but it did not dismiss a second charged violation of Prof.Cond.R. 4.1(a) under Count 2 of the complaint.

the suspension fully stayed on conditions. The board adopted the panel's findings of fact, conclusions of law, and recommended sanction.

{¶ 4} After a review of the record, we adopt the board's findings of fact and misconduct and the recommended sanction. We suspend Ryan from the practice of law in Ohio for one year, with the suspension fully stayed on the conditions that she (1) serve a one-year period of monitored probation in accordance with Gov.Bar R. V(21), with monitoring focused on law-practice management, (2) complete 12 hours of continuing legal education ("CLE") focused on law-practice management and/or law-office technology within one year of the date of this disciplinary order, in addition to the requirements of Gov.Bar R. X, and (3) engage in no further misconduct.

## MISCONDUCT

### *Count 1: The Smith Matter*

{¶ 5} In 2015, Monique Smith retained Ryan to represent her in her divorce. A fee agreement that was executed between the two established that the representation was limited to Ryan's securing a divorce decree for Smith and did not include postdecree work, such as orders to divide marital property.

{¶ 6} On October 13, 2017, the domestic-relations court issued the divorce decree. In the decree, the court awarded Smith half of the marital portion of her former husband's interest in his Ohio Public Employees Retirement ("OPERS") account. However, Smith could not access her share of that account until the domestic-relations court entered a division of property order ("DOPO") in the divorce action.

{¶ 7} On September 5, 2018, Smith sent a text message to Ryan requesting that she finalize the DOPO. Ryan did not respond to that particular text. After roughly a year of limited, intermittent communications, Ryan finally quoted Smith $750 for the DOPO representation on November 13, 2019. Although she initially could not afford this fee, Smith agreed to having Ryan pause her work on the case

until Smith could pay the balance that she owed. Smith mustered the necessary funds by January 28, 2020, and Ryan sent Smith a copy of the representation agreement for signature.

{¶ 8} Ryan failed to complete the DOPO. Despite numerous—and sometimes desperate—pleas from Smith, Ryan continued to neglect Smith's case for more than two and a half years. And throughout that time, Ryan reassured Smith that she was making progress on the DOPO, saying things like "I will get to it today!" (December 17, 2020), "I will be able to send it later this afternoon" (February 4, 2021), and "I am on it. I apologize for the delay. I will follow up tomorrow." (March 21, 2022).

{¶ 9} By August 2022, Smith's frustration with Ryan was apparent, as she texted Ryan: "[I] paid for the [DOPO] 3 years ago." Ryan's continued inaction eventually led Smith to file a grievance with relator on August 31, 2022. However, less than two weeks later, Smith sought to withdraw her grievance following a conversation she had with Ryan that led Smith to believe that Ryan could not continue to represent her unless Smith withdrew the grievance. Relator nonetheless continued its investigation into the matter. In a subsequent email to relator, Smith said that she hoped to "dismiss the case" against Ryan and that she "did not agree to waive privileges." When Smith sent that email, she did not have a full understanding of the implication of waiving the attorney-client privilege.

{¶ 10} Ryan finally filed a motion addressing the DOPO on October 18, 2022, but as of April 2024, the DOPO was still pending before the domestic-relations court.

{¶ 11} Based on the evidence presented at the hearing and the stipulations of the parties, the board found by clear and convincing evidence that Ryan violated Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence and promptness in representing a client), 1.4(a)(3) (requiring a lawyer to keep a client reasonably informed about the status of a matter), and 1.4(b) (requiring a lawyer to

explain a matter to the extent reasonably necessary for the client to make informed decisions regarding the representation).

*Count 2: The Disciplinary Investigation*

{¶ 12} As noted above, on August 31, 2022, Smith filed a grievance against Ryan based on Ryan's neglect and lack of communication. Then, on September 9, 2022, Smith decided to withdraw her grievance, and she sent a letter to relator declaring: "I have been in contact with Mrs. Ryan, and she has agreed to finish working on my case." Then, in subsequent text messages between Smith and Ryan concerning the DOPO, Smith stated: "You asked me to take my complaint back, which I did the very next morning and I'm still waiting!" The text messages indicate what amounts to a quid pro quo with Smith: in exchange for Smith's withdrawing the grievance, Ryan would complete the work on her case.

{¶ 13} Nevertheless, relator continued its investigation, and Ryan initially failed to respond to relator's letter of inquiry regarding the grievance, as required by Gov.Bar R. V(9)(G). When she did respond on September 16, 2022, Ryan told relator, "I am concerned about how much of a response I can provide without violating attorney/client privilege." Relator replied the same day, informing Ryan that pursuant to Prof.Cond.R. 1.6(b)(5),[2] she would not violate the attorney-client privilege if during relator's investigation into Smith's grievance, Ryan disclosed information about her representation of Smith. Even so, Ryan refused to produce

---

2. Prof.Cond.R. 1.6(b)(5) provides:

> (b) A lawyer may reveal information relating to the representation of a client, including information protected by the attorney-client privilege under applicable law, to the extent the lawyer reasonably believes necessary for any of the following purposes:
> . . .
> (5) to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, to establish a defense to a criminal charge or civil claim against the lawyer based upon conduct in which the client was involved, or to respond to allegations in any proceeding, including any disciplinary matter, concerning the lawyer's representation of the client.

documents related to the representation, insisting that relator cite to specific rules or legal authorities that would permit her to comply without violating attorney-client privilege. In a follow-up email to her request to withdraw the grievance she had filed against Ryan, Smith again sought to end relator's investigation into Ryan's misconduct. This time, Smith ended the letter by stating that she did "not agree to waive privileges" and that she would not give relator "permission to communicate" with her. Smith had added this language in accordance with Ryan's explicit instruction, in which Ryan had asked Smith to "update the letter to the CBA to include a line that [Smith did] not want to waive privilege." As Smith understood it, her refusal to waive the attorney-client privilege was needed "to withdraw the complaint." Later, during her testimony at Ryan's disciplinary hearing in April 2024, Smith confirmed that she had not had a problem with the disclosure of her information to relator.

{¶ 14} Based on the evidence presented at the hearing and the stipulations of the parties, the board found by clear and convincing evidence that Ryan violated Prof.Cond.R. 4.1(a) and 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). The panel unanimously dismissed the charge related to Prof.Cond.R. 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law).

## SANCTION

{¶ 15} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 16} The parties stipulated and the board found that two aggravating factors were present in this case: (1) prior discipline and (2) a pattern of misconduct. *See* Gov.Bar R. V(13)(B)(1) and (3). As for mitigating factors, the parties stipulated and the board found that Ryan: (1) made a timely, good faith effort to

make restitution to Smith and to rectify the consequences of her misconduct, (2) displayed a cooperative attitude toward the disciplinary proceedings before the board, and (3) provided evidence of good character and reputation. *See* Gov.Bar R. V(13)(C)(3) through (5). Further, the board also considered the fact that Ryan had subsequently worked on completing her representation of Smith without charging her and that the delay in court proceedings in Smith's divorce case was at least partially attributable to the COVID-19 pandemic and Ryan's uncertainty about her potentially competing duties to cooperate in the disciplinary investigation while simultaneously working to safeguard Smith's privileged information from falling into the hands of an adverse party (i.e., Smith's former husband).

{¶ 17} The board recommends that we suspend Ryan from the practice of law for one year, with the suspension fully stayed on the conditions that she (1) serve a one-year period of monitored probation in accordance with Gov.Bar R. V(21), with monitoring focused on law-practice management, (2) complete 12 hours of CLE focused on law-practice management and/or law-office technology within one year of the date of this disciplinary order, in addition to the requirements of Gov.Bar R. X, and (3) engage in no further misconduct.

{¶ 18} In determining the appropriate sanction for Ryan's misconduct, we begin with the presumption that an actual suspension is warranted when an attorney engages in a course of conduct involving dishonesty, fraud, deceit, or misrepresentation. *Disciplinary Counsel v. Fowerbaugh*, 1995-Ohio-261, syllabus. We have, however, tempered this presumption in two sets of circumstances. *See Mahoning Cty. Bar Assn. v. Macala*, 2024-Ohio-3158, ¶ 24. First, when the misconduct is an isolated incident and not a course of misconduct, an otherwise unblemished legal career may warrant a lesser sanction. *See Disciplinary Counsel v. Eisenberg*, 1998-Ohio-472, ¶ 4. And second, if there is "an abundance of mitigating evidence," a lesser sanction may be warranted as well. *Disciplinary Counsel v. Markijohn*, 2003-Ohio-4129, ¶ 8.

**{¶ 19}** In addition to considering the presumptive sanction from *Fowerbaugh*, the board also relied on *Columbus Bar Assn. v. Bulson*, 2023-Ohio-4258, and *Stark Cty. Bar Assn. v. Arkow*, 2022-Ohio-3209, among others, in making its recommendation.

**{¶ 20}** In *Bulson*, a client retained Bulson to represent her in a domestic-relations case. *Bulson* at ¶ 7. After the domestic-relations court entered an agreed judgment entry in January 2013, Bulson was tasked with preparing a qualified domestic-relations order ("QDRO") to transfer a portion of his client's former husband's 401(k) account to his client. *Id.* Bulson "did not take the necessary actions to finalize the QDRO for more than eight years notwithstanding [the client's] frequent inquiries and attempts to call him." *Id.* at ¶ 8.

**{¶ 21}** We concluded that Bulson's misconduct violated Prof.Cond.R. 1.3, 1.4(a)(2), 1.4(a)(3), and 1.4(a)(4) (requiring a lawyer to comply as soon as practicable with a client's reasonable requests for information). *Bulson* at ¶ 12. Three aggravating factors were present: prior discipline, a pattern of misconduct, and the vulnerability of and resulting harm to the client. *Id.* at ¶ 14. Mitigation included the absence of a dishonest or selfish motive and a cooperative attitude toward the disciplinary proceedings. *Id.* We imposed an 18-month suspension, with 12 months stayed on the condition that Bulson commit no further misconduct. *Id.* at ¶ 33. We also ordered him to complete three hours of CLE focused on law-office management and serve a one-year period of monitored probation. *Id.* Of note, the board concluded that Bulson's conduct warranted an actual suspension because he had previously received a fully stayed suspension in a prior disciplinary case. *Id.* at ¶ 17.

**{¶ 22}** In *Arkow*, 2022-Ohio-3209, a client paid the attorney in November 2019 to obtain a QDRO to divide her former husband's retirement account. *Id.* at ¶ 5. Arkow falsely assured the client that he had submitted her information to a company that would prepare the QDRO and was waiting for it to be processed,

delaying the matter for over a year. *Id.* at ¶ 6-7. Eventually, the client informed Arkow that she was going to file a grievance against him, after which Arkow attempted to mislead the client by backdating documents related to the QDRO. *Id.* at ¶ 7. Arkow then falsely assured the relator that he had timely submitted the client's payment and documents for the QDRO. *Id.* Arkow engaged in a similar pattern of misconduct with a second client's QDRO beginning in March 2020. *Id.* at ¶ 10.

**{¶ 23}** We concluded that Arkow's misconduct violated Prof.Cond.R. 1.3, 1.4(a)(3), 1.4(a)(4), 8.1(a) (prohibiting a lawyer from knowingly making a false statement of material fact in connection with a disciplinary matter), and 8.4(c). *Id.* at ¶ 9-10. As aggravating factors, there was prior discipline, a dishonest or selfish motive, a pattern of misconduct, the commission of multiple offenses, and the submission of false evidence and false statements during the disciplinary process. *Id.* at ¶ 12. Mitigation included timely restitution to the affected clients, full and free disclosure to the board, and evidence of good character. *Id.* at ¶ 13. We suspended Arkow from the practice of law for two years, with one year stayed on the conditions that he commit no further misconduct; engage in regular mental-health treatment as recommended by a qualified healthcare professional; and complete eight hours of CLE, with a focus on QDROs, ethics, and law-office management. *Id.* at ¶ 22. Like the attorney in *Bulson*, Arkow had previously been disciplined and had received a fully stayed one-year suspension. *Id.* at ¶ 1.

**{¶ 24}** In addition to the caselaw relied on by the board, *Dayton Bar Assn. v. Ellison*, 2008-Ohio-1808, is also instructive here. In *Ellison*, the attorney never followed through with a client's divorce case, failing to obtain a QDRO after she "'kind of gave up' " on the matter when it became too complicated. *Id.* at ¶ 6. Additionally, in her representation of a second client, Ellison neglected the client's employment-discrimination case and subsequently misled the client about the status of the case, telling the client that she "'didn't know anything' " about an

adverse judgment that had been entered against the client. *Id.* at ¶ 7-9. Only when directly confronted by the client did Ellison admit that she had known for months that summary judgment had been entered against the client. *Id.* at ¶ 9.

{¶ 25} We concluded that Ellison's misconduct violated former Code of Professional Responsibility rules DR 1-102(A)(4), DR 1-102(A)(6), and DR 6-101(A)(3), because she had failed to diligently pursue two client matters and misled one client about the disposition in her case. *Id.* at ¶ 6, 12; *see also* Prof.Cond.R. Appendix A (former DR 1-102(A)(4) is substantially similar to Prof.Cond.R. 8.4(c); former DR 1-102(A)(6) is substantially similar to Prof.Cond.R. 8.4(h); former DR 6-101(A)(3) is substantially similar to Prof.Cond.R. 1.3). We noted that Ellison had been publicly reprimanded but that the discipline had been imposed nearly 20 years earlier. *Ellison* at ¶ 15. Mitigating factors included cooperation in the disciplinary process and evidence of good character and reputation. *Id.* at ¶ 16. We imposed a fully stayed one-year suspension on the conditions that Ellison serve a one-year term of monitored probation and complete a CLE course on law-office management. *Id.* We declined to impose an actual suspension for her dishonest conduct because there was sufficient mitigating evidence. *Id.* at ¶ 13-16 (finding that sufficient mitigating evidence warranted a stayed suspension).

{¶ 26} In the case now before us, Ryan's misconduct is comparable to the ethical violations in *Bulson*, *Arkow*, and *Ellison*. As in other cases involving dishonesty by an attorney, we begin with the presumption from *Fowerbaugh*, 1995-Ohio-261, that an actual suspension is warranted here. Ryan violated Prof.Cond.R. 8.4(c) when she misled Smith and relator about the waiver of the attorney-client privilege and other matters related to Smith's grievance. Even so, as explained above, we have recognized that a lesser sanction may be appropriate when the attorney presents sufficient mitigating evidence. *See Macala*, 2024-Ohio-3158, at ¶ 24; *Markijohn*, 2003-Ohio-4129, at ¶ 8. And here, there is sufficient mitigating evidence to warrant a fully stayed suspension. In addition to the mitigating factors

present here, Ryan's delay was at least partially attributable to the COVID-19 pandemic, and she has since worked toward completing her representation of Smith without charge.

**{¶ 27}** However, alongside the *Fowerbaugh* presumption, *Bulson* provides an additional basis for an actual suspension in certain cases: an attorney's misconduct may warrant an actual suspension when the attorney's sanction in a prior disciplinary matter was a fully stayed suspension. *Bulson*, 2023-Ohio-4258, at ¶ 17 (imposing an actual suspension after recognizing that the fully stayed suspension for prior misconduct had not adequately protected the public); *see also Arkow*, 2022-Ohio-3209, at ¶ 1, 22 (sanction included an actual suspension after prior one-year suspension that was fully stayed on conditions). By contrast, when an attorney's prior sanction involved only a public reprimand, a fully stayed suspension with conditions may be appropriate in a subsequent disciplinary matter. *See, e.g.*, *Ellison*, 2008-Ohio-1808, at ¶ 15-16 (prior public reprimand and subsequent discipline of fully stayed suspension with conditions). Ryan's only prior discipline is a 2015 public reprimand. Therefore, in addition to our determination that Ryan has offered sufficient mitigating evidence to warrant a lesser sanction in accord with the exceptions to the *Fowerbaugh* presumption set out in *Macala*, we conclude that Ryan's prior discipline does not warrant an actual suspension under our holdings in *Bulson* and *Arkow*.

**{¶ 28}** Ryan's misconduct included violations of Prof.Cond.R. 4.1(a) and 8.4(c) by being dishonest with her client and relator. As such, her misconduct is most analogous to the misconduct in *Ellison*, in which the attorney deceived a client in addition to neglecting client matters. In *Ellison* we imposed a one-year suspension, fully stayed on conditions. We agree with the board that the same sanction is warranted for Ryan's misconduct.

**{¶ 29}** We do not condone Ryan's neglect of a client matter, her failure to reasonably communicate with a client, and her false statements to her client and

relator. But in accord with our holdings in *Fowerbaugh*, *Macala*, and *Bulson*, we conclude that a fully stayed one-year suspension, with the conditions recommended by the board, will adequately protect the public from future misconduct. *See Cleveland Metro. Bar Assn. v. Mariotti*, 2019-Ohio-5191, ¶ 27; *see also Disciplinary Counsel v. Carter*, 2023-Ohio-3992, ¶ 31 ("The primary purpose of attorney discipline is not to punish the offender but to protect the public against members of the bar who are unworthy of the trust and confidence essential to the attorney-client relationship.").

## CONCLUSION

{¶ 30} Accordingly, Corinne Noelle Ryan is suspended from the practice of law in Ohio for one year, with the suspension stayed in its entirety on the conditions that she (1) serve a one-year period of monitored probation in accordance with Gov.Bar R. V(21), with monitoring focused on law-practice management, (2) complete 12 hours of CLE focused on law-practice management and/or law-office technology within one year of the date of this disciplinary order, in addition to the requirements of Gov.Bar R. X, and (3) engage in no further misconduct. If Ryan fails to comply with any condition of the stay, the stay will be lifted and she will serve the full one-year suspension. Costs are taxed to Ryan.

Judgment accordingly.

––––––––––––––––––

Holly Wolf and Kent R. Markus, Bar Counsel; Vorys, Sater, Seymour and Pease, L.L.P., and Elizabeth Thym Smith; and The Piacentino Law Group and Gina M. Piacentino, for relator.

Montgomery Jonson, L.L.P., George D. Jonson, and Lindsay M. Upton, for respondent.

––––––––––––––––––